Good morning, members of the panel. Mr. Wilson, my name is John Lambrose. I'm here on behalf of Mr. Pat Randle, the appellant. And I'd like to reserve about a minute of time, if I could, for rebuttal. In the time that I have available, I'd like to address my remarks to the briefing that I did at pages 22 through 36 of the opening brief, what I will characterize as the date of finality briefing, the 2244 D1A briefing. Since the briefing was completed, and prior to today's date, the U.S. Supreme Court, in the recent case of Jimenez v. Quarterman, I think, has settled this question and settled it in favor of Mr. Randle and settled it in a way that even I didn't predict in my briefing. Specifically, I think that – and I provided the Jimenez case to this Court last week and to Mr. Wilson and brought extra copies just in case the Court didn't get it. In a nutshell, what the Jimenez case decided was, if, as in Mr. Randle's case, a State court, in post-conviction, determines that what I will characterize as Lozada in Nevada or Roe v. Ortega error occurs, an out-of-time – and the State orders an out-of-time appeal to take place. And in Nevada, that occurs through what I described in the briefing as the Lozada line of cases. And what the Nevada Supreme Court said in Lozada at the end of the opinion, which was, Mr. Lozada's counsel blew his appeal. We note that we cannot give him a new appeal in this Court because of our jurisdictional restraints under Rule 4b. But we can give him the functional equivalent in State habeas corpus. And that is what happened in Lozada. That's what happened in Mr. Randle's case. And, you know, just to help the panel out in terms of where this can be found in the record, obviously, when Mr. Scrow did not – when he fell on his sword, so to speak, and told the State trial court that he did not file a timely notice of appeal, he wanted to be relieved as counsel. Can you extend the notice of appeal? Judge Lohr, the trial judge, said, I don't think I can do that. I will appoint the Special Public Defender's Office, and they can perfect his rights. Well, the Special Public Defender's Office blew it and didn't file a timely post-conviction petition. But that was cured by Mr. Randle himself in 1998. And the man who prosecuted him, the current district attorney in Las Vegas, Mr. David Roger, conceded at that proceeding that he was entitled to an out-of-time appeal. So Judge McGroarty's decision denying – the State judge's decision denying the petition noted that concession, noted that he was entitled to an out-of-time appeal, and did, in fact, address each and every one of the appellate issues on the merits. And that decision is found at excerpts pages 55 to 65. On appeal, Mr. Randle's lawyer abandoned him, and the Nevada Supreme Court, at excerpts page 54A through C, noted once again that he was entitled to appellate counsel for an out-of-time appeal, and remanded it back down, so – remanded it so an attorney could be appointed. An attorney was appointed. Briefing on all of the direct appeal issues took place, and the Nevada Supreme Court denied all of the merits issues on the merits. But again, at pages 49 through 53 of the excerpts, the Nevada Supreme Court noted that this, indeed, was an out-of-time appeal. So at the end of the day, what that gets you, per Jimenez v. Quarterman, is a date of finality even later than the one that I briefed. And in my briefing, I – as I said in footnote 20, I'll look at this in the light most favorable to the Attorney General, and that should be when the Nevada Supreme Court's original order dismissing the appeal on jurisdictional grounds came down, June 18th, 1997. In fact, after Jimenez, the date of – the date of finality would be 90 days after September 3rd, 2002, which, as it turns out, would – Mr. Randle, because he filed his state post – or excuse me, his 2254 petition in November of 2002, Mr. Randle did not use one day of AEDPA time. So your position is that he's got a year to speak? My position is this case needs to be reversed, remanded back down for a review of each one of the merits claims that were pled in his amended petition. Unless the Court has any questions with regard to my equitable tolling argument, which I don't think you need to reach because of the Jimenez case, or the waiver argument, which, again, I don't think needs to be reached, but I'm certainly willing to address it because I think they're both compelling arguments, I'll reserve the remainder of my time. Thank you. Thank you. Good morning, Your Honors. Dennis Wilson from the Attorney General's Office in Nevada on behalf of the appellee. In this case, the main thrust of our argument is that the only thing that prevented or impeded Mr. Randle from filing his Federal direct appeal or, excuse me, from filing his Federal petition was his own lack of knowledge about the AEDPA one-year statute. If he did know about the Federal time bar, he didn't know that it started running 30 days after he was convicted, and he didn't know that he could toll the Federal time bar by filing a state post-conviction petition. If he had done that, or if he had known that, then he could have timely filed his Federal appeal. With regard to the Jimenez v. Quarterman case, counsel characterizes this as an out-of-time direct appeal. In the state of Nevada, the Nevada Supreme Court is prevented by state law from reopening a direct appeal. It can only hear a direct appeal if a defendant timely files that appeal. When he doesn't timely file it, he has no direct appeal. That's why the Federal statute of limitations began to run one month after he was convicted. Mr. Holmes, the appellant refers to this grant or this procedure that the Nevada Supreme Court has created. Because it's bound, because it cannot hear a direct appeal, unlike in Texas, which has a statute which allows you to reopen a direct appeal, the Nevada Supreme Court has to come up with a way where those direct appeal issues can be heard. And they're very careful about the exact wording that they use. They say that they call this, if I could just read this here, Lazada v. State provides that the appropriate remedy where counsel has deprived the defendant of his right to appeal is to allow the defendant an opportunity with the assistance of counsel to raise in a petition for writ of habeas corpus any issues which he could not have raised on direct appeal, and then to appeal any decision of the district court denying relief to this court. That is not the same facts as Jimenez v. Quarterman. In Jimenez v. — well, in the Jimenez v. Quarterman case, the United States Supreme Court says this is a narrow ruling. And throughout the entire opinion, they talk about the fact that this is a direct appeal-type case. When you look at direct review versus direct appeal, they say we're looking at this through the prism, if you will, of a direct appeal. Right. But if the Nevada courts have characterized this as a functional equivalent of a direct And, Your Honor, I have looked for this word, functional equivalent, and perhaps I just didn't find it. But I would argue that it's not a functional equivalent. It's an appropriate remedy. Normally, in State postconviction proceedings, you cannot raise direct appeal claims in your State postconviction proceeding. But because in cases where counsel does not timely file, and he's an effective filing, then the Nevada Supreme Court says we will allow you in a State collateral proceeding to raise these direct appeal issues. And that is not a direct appeal claim. They cannot. The Nevada Supreme Court cannot. They have no jurisdiction over that direct appeal. If an issue is raised on collateral appeal and in a case in which there was no direct appeal, is there proof in Nevada courts on that question? You're given burden in order to sustain a claim of error that was never raised on direct appeal. I don't believe so. I believe the direct appeal issues would be addressed in the same fashion, the same manner. It's just that the procedure is different. And our argument is that Jimenez v. Quarterman only narrowly views this issue from the standpoint of a direct appeal pursuant to a statute which allows the Ariz the Texas, excuse me, the Texas criminal court of appeals to reopen that direct appeal and then to start over from that time forward. If Jimenez applies to this case, do you agree with counsel's calculation of the time? I mean, assuming for the sake of argument, and I know you are conceding it, but assuming for the sake of argument Jimenez applies, do you agree with counsel's calculation of when EDPA statute of limitations would have commenced? You know, we haven't, because of the recency of this case, we haven't really had a chance to brief it. We've had one week to look at it. I'm a little nervous about conceding anything. So I would think that if they had looked at this, at these issues, and, for example, if they had overturned his conviction, then the statute would start to run at the conclusion of the direct review. We're arguing that direct review does not equate to direct appeal, that Jimenez v. Quarterman only addresses this issue in the context of a direct appeal, and it's a narrow holding. So your position basically, and I understand you're just answering our questions without the benefit of having time to brief, is that if the prisoner wants an appeal, his attorney doesn't take it, he's granted collateral review, and ultimately that goes up and the issues are presented to the state Supreme Court and they rule on the merits, that he's out of luck because Ed Probst started to run 30 days after his trial? No, he's not out of luck, Your Honor. There is an appropriate procedure. As the Nevada Supreme Court said, there is a remedy, and that remedy is to raise those issues in your state post-conviction hearing, and then they can be addressed in that. Right, but when under that scenario do you think the statute of limitations runs under AEDPA or starts to run? Well, if the court equates that to a direct review, then it would start to run after the conclusion of direct review, which would be after the Nevada Supreme Court decided those issues or the time for appealing it to the U.S. Supreme Court expired. So in that scenario that would be after the collateral review had taken place, right? Had concluded. I mean, it wouldn't make any sense to me, but maybe there's a better argument to that, to say you didn't have any direct appeal, the state allows you a different mechanism for doing that, but your statute of limitations starts to run 30 days after trial when you're No, I'm just saying that the, from the standpoint of a direct appeal, under Nevada law, the direct appeal is finished, it's done, the Nevada Supreme Court has no jurisdiction to hear that 30 days after the conviction is entered if there's no timely notice of appeal filed. The other argument I'd raise, Your Honor, is that the Nevada Supreme Court, as Mr. Lambrose mentioned, in footnote 20 of his brief, the state would argue that he waived this argument. He didn't raise that argument. This Jimenez v. Quarterman argument was not raised by him. In fact, he emphasized that he was not raising this argument. In footnote 20, he says, quote, this proposition, the fact that the statute of limitations, the federal one-year statute of limitations did not begin to run until June 18th of 1997 when the Nevada Supreme Court ruled it had no jurisdiction to hear the direct appeal. He said that this proposition is particularly deferential to the State of Nevada because Randall does not argue that his date of finality occurred when the 1998 habeas action concluded, that would be October 1st, 2002. Instead, Randall contends that in the light most favorable to the State of Nevada, the date of finality occurred on June 18th, 1997 and ran until January 26th, 1998, the date the State habeas action commenced. Because he did not raise that argument, he arguably he waived it, the State would argue that Jimenez v. Quarterman has no application to this case. Thank you, Mr. Wilson. We'll hear Rebono. Well, I'll address the waiver argument first. I guess I regret not overreaching when I wrote my brief, but Jimenez wasn't on the books. And if you read pages 35 through 36 of my briefing, and I won't bore you with it, Jimenez is consistent with Lozada's in that he was improperly denied direct appellate and post-conviction review of his conviction and sentence. First, the 1-year clock does not begin to run until the Petitioner's case is final, and that occurs at the conclusion of direct review, and I cite the statute and Lawrence. I'm sorry. Are you reading from page 35? Yes, 35 of my opening brief. The text or the footnote? The text. And then I cite 2244d1a, which, of course, Jimenez addresses, and Lawrence v. Florida, which is prominently cited in the Jimenez case. Then I argue, and I said this in my opening argument, I argued in my brief that in the light most favorable to the State, as the law existed at the time, and so I didn't overreach, the deadline the time would have begun again, conservatively speaking, when the Nevada Supreme Court's first order dismissing the appeal on jurisdictional grounds came down. That was June 18th, 1997. Now, I'm just saying this because I didn't waive anything. And it's kind of academic anyway, because if you want to start the date of finality then, which wouldn't be in compliance with Jimenez, Mr. Randall's case is still timely. But I would urge this Court to follow the United States Supreme Court's case in Jimenez and set the date of finality when it is appropriate. Okay. Mr. Lambros, I want to make sure I understand. Your position is that after Jimenez, the time runs from which date? It runs from the date in which the 1998 post-conviction petition was final as defined under Federal law. And that occurred on September I want to say September the 3rd. Of which year? Of 2002. Yeah. September the 3rd, 2002, that's the appeal on 49th. And the reason it's September the 3rd is because the date of finality is when the order dismissing appeal occurs. It's not when remitted or issues. And then you have the ---- I'm sorry. Just bear with me for just one second. So September 3rd, 2002 ---- Plus 90. Okay. Plus 90. But what happens on September 3rd, 2002? That's when the out-of-time appeal proceeding concluded. So that's the ---- this is the direct appeal to the Nevada Supreme Court arguing that he should have been able to file a late notice of appeal. Yes. See, what happened was when he filed that post-conviction petition in January of 1998, the district attorney's office conceded that he was entitled to an out-of-time appeal and that his grounds should be heard on the merits. So as soon as that occurred, puts a square into Jimenez v. Quarterman. And I'd just like to ---- Well, if the DA conceded that, the Court obviously didn't buy it. Yes, it did. Judge, the State district court bought it and heard the grounds on the merits, heard all of the appellate claims on the merits, denied them on the merits. Randall took a timely appeal. He got a lawyer because the Nevada Supreme Court said in its order of remand he's entitled to a lawyer because this is his constitutionally guaranteed first appeal. The Nevada Supreme Court then took, you know, took two or three years, and after that, the Nevada Supreme Court heard the appeal, denied it on the merits on September 3rd, 19 or 2002. Then under Clay v. United States, Jimenez, and Lawrence v. Florida, he got a lawyer and he got another 90 days. So his date of finality, ironically, was after the date on which he commenced this action. All right. What was the date where he commenced this action? November 18th, 2002, when he mailed it to the ---- when he provided it to the prison for mailing. And I just want to make one other ---- two more points. If you read the Lozada decision ---- Before you leave that ---- Yes. This is your 2244 argument, right? Yes. We haven't decided that issue in this circuit, have we? The Jimenez issue? Yes. The timeliness under 2244. No. That's what's before this Court. Because it was dismissed on timeliness grounds in front of the district court. Okay. I'm sorry. I hope I understood your question, Judge Wallace. I'm sorry. I just wanted to make two more points. The Lozada case, the 1994 Lozada case, if you look at that opinion, 871 Pacific 7, 2nd, 944 at page 950, the Nevada Supreme Court clearly says that the out-of-time remedy for ---- the remedy for an out-of-time appeal is State postconviction with a lawyer so your appellate issues can be heard. Then, and I 28J'd this to the Court last week, and you have it, is a ---- the Nevada Supreme Court, effective July 1st, 2009, will change their appellate rule requiring the 30-day period of time in which to file a notice of appeal, and they've got ---- they've added NRAP 4C to take care of situations just like this where an out-of-time where the petitioner can prove that an out-of-time appeal should have been filed. Once that happens, the Nevada Supreme Court now, thank goodness, has said we will order the clerk to tender a notice of appeal, and we'll just start the ball rolling. All talks will start to roll as of that day. So any petition you file after that won't be a successor, et cetera. And it doesn't apply to this case, but I gather ---- No, but what I ---- my point is everybody in Nevada except the Attorney General seems to ---- seems to agree with me, including all of the courts that have looked at this case, both before and after, because I took Mr. Randle back down for another postconviction proceeding where we litigated ineffective assistance of appellate counsel claims after the stipulation, and there was good ---- and the Nevada Supreme Court and the Nevada State courts heard those claims. So he filed yet another postconviction petition. And to me, that only adds more weight to the argument that that first round of habeas was indeed an out-of-time appeal. And that's why the at-the-clock cannot start. And it had to have started when I was talking to ---- when I was telling Judge Bivey in December of 2002. Okay. I think we have your argument, Ann. Interesting case. Thank you both for your arguments. The case is heard. It will be submitted.
judges: Wallace, Thomas, Bybee